UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| YOANDY FERNANDEZ-MORALES,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GAZZINI, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:23-CV-00124-CLB[1]<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 66] |

This case involves a civil rights action filed by Plaintiff Yoandy Fernandez-Morales ("Fernandez-Morales") against Defendants Bob Faulkner ("Faulkner"), Joseph Grazzini ("Grazzini"), Michael Minev ("Minev"), Symour Omandac ("Omandac"), and Brian Robison ("Robison") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 66, 68.)[2] Fernandez-Morales opposed the motion, (ECF No. 75), and Defendants replied, (ECF No. 77). For the reasons stated below, the Court grants Defendants' motion for summary judgment, (ECF No. 66).

I.     **BACKGROUND**

　　A.     **Procedural History**

Fernandez-Morales is in an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Fernandez-Morales was housed at the Southern Desert Correctional Center ("SDCC"). Pursuant to the Court's screening order on Fernandez-Morales's complaint, he is proceeding on the following claims: (1) Count 1, an Eighth Amendment unsafe prison conditions claim

---

[1]     The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 41.)

[2]     ECF No. 68 consists of exhibits filed under seal in support of the motion for summary judgment.

against Defendants Grazzini and Robison for allegedly failing to replace a ladder on his bunk or repair the light in his cell causing Fernandez-Morales to injure his right ankle in a fall; (2) Count 2, an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Omandac and Faulkner for allegedly failing to properly treat Fernandez-Morales's right ankle after the fall in his cell; and (3) Count 3, an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Omandac and Minev for allegedly failing to properly treat a testicle injury that also occurred during the fall. (ECF No. 11.)

Fernandez-Morales was also permitted to proceed against Defendant Gregory Martin; however, Defendant Martin is deceased. (*See* ECF No. 18.) Thus, Fernandez-Morales filed a motion to substitute, (ECF No. 19), which the Court granted in part. (ECF No. 44.) Specifically, the Court ordered that a motion for substitution be filed by May 6, 2024, and if such motion was not made by that date, the action would be dismissed pursuant to Fed. R. Civ. P. 25(a)(1). (ECF No. 44.) To date, no such motion was filed, and therefore Defendant Martin is dismissed from this action.

On August 9, 2024, Defendants filed the instant motion for summary judgment arguing: (1) Fernandez-Morales failed to exhaust his administrative remedies with respect to the two medical deliberate indifference claims; (2) Defendants are entitled to qualified immunity because there was no constitutional violation and there was no clearly established law that would have placed Defendants on notice that they were violating Fernandez-Morales's rights; (3) several Defendants did not personally participate in the alleged constitutional violations; and (4) there is no basis for punitive damages. (ECF No. 66.)

**B.    Undisputed Facts**

The following facts are undisputed: From June 7, 2021, until July 9, 2022, Fernandez-Morales was housed at SDCC in Unit 3, Wing C, Cell 1, Bunk A. (ECF No. 66-2 at 2.) Bunk A is a lower bunk. (ECF No. 66-4 at 4; ECF No. 66-16 at 4.) On September 15, 2021, Fernandez-Morales submitted an inmate request form requesting

that a ladder be installed on his bunk. (ECF No. 66-4 at 4.) However, this kite did not generate a work order for maintenance because it did not come from an approved source. (*Id.*) As outlined in Administrative Regulation ("AR") 487, work orders cannot be submitted on a kite because they must contain a proper authorized signature when they are received by the maintenance department. (ECF No. 66-5 at 2.)

There were five work orders entered for Fernandez-Morales's cell in October 2021. (ECF No. 68-2; ECF No. 66-6 at 5-6.) On October 4, 2021, a work order was entered requesting repairs to the hot water in the sink. (ECF No. 68-2 at 2.) On October 12, 2021, a work order—the first regarding the lights in Fernandez-Morales's cell—was issued, noting that one light was out while the other was flickering. (*Id.* at 3.) On October 13, 2021, a second work order regarding the lights being out was entered. (*Id.* at 4.) On October 14, 2021, a third work order was entered, stating the light switch was not working. (*Id.* at 5.) Finally, on October 18, 2021, a fourth work order was entered regarding both lights being out. (*Id.* at 6.) This final work order notes the work was completed on October 26, 2021. (*Id.*) There are no work orders regarding replacing Fernandez-Morales's bunk or providing a ladder at the time relevant to this lawsuit. (*See id.* at 2-6; ECF No. 66-6 at 5-6.)

Fernandez-Morales received medical treatment on October 24, 2021, in his cell at Unit 3-C-1, after he "jumped off the top with no lights off to use the bathroom [and] landed hard and twisted [right] foot really bad." (ECF No. 68-3 at 2.) An unusual occurrence report was prepared by SDCC medical staff documenting their findings during the medical evaluation. (*Id.*) The assessment and progress notes state Fernandez-Morales suffered a "possible r[ight] foot fracture." (*Id.* at 2, 41.)

That same day, Fernandez-Morales was taken to University Medical Center ("UMC") for further evaluation of his foot. (*Id.* at 2-8, 41.) X-rays performed on Fernandez-Morales's right foot and ankle showed no acute fractures, malalignment, or destructive mass. (*Id.* at 7-8.) Discharge notes state Fernandez-Morales would need a recheck by an orthopedist to evaluate for possible nondisplaced fracture versus sprain. (*Id.* at 3.)

Fernandez-Morales was returned to SDCC and a referral to the orthopedic clinic was entered by Omandac on October 25, 2021. (*Id.* at 9, 41.) Fernandez-Morales was approved to be seen in the orthopedic clinic on November 10, 2021. (*Id.* at 9.)

Fernandez-Morales was ultimately seen at the orthopedic clinic on December 8, 2021, by orthopedic specialist Dr. Richard Wulff. (*Id.* at 10.) Dr. Wulff diagnosed Fernandez-Morales with a grade 3 right ankle sprain, which generally takes up to three months to heal. (*Id.*) The appointment ended with a recommendation that Fernandez-Morales receive up to 3000mg of Tylenol for pain, that Fernandez-Morales receive analgesic balm, and continue to have access to his walking boot while recovering, with a follow-up appointment as needed. (*Id.*)

A referral for a follow-up appointment with the orthopedic clinic was issued on December 22, 2021, when Fernandez-Morales was seen for a follow-up appointment regarding his right ankle, and the referral was approved on January 7, 2022. (*Id.* at 11, 40.) Fernandez-Morales was seen in sick call on January 6, 2022, complaining of pain in his right ankle, and he received a refill of his medications. (*Id.* at 38.)

Fernandez-Morales was seen in the orthopedic clinic for a six-month follow-up on April 20, 2022. (*Id.* at 12.) Dr. Wulff noted that all ligaments were intact and recommended an MRI to help diagnose the source of Fernandez-Morales's alleged pain. (*Id.*) Two referrals were completed the next day, April 21, 2022, requesting that Fernandez-Morales have an MRI of his right ankle and be seen again in the orthopedic clinic after the MRI results became available. (*Id.* at 13-14.) On May 10, 2022, Fernandez-Morales was certified to continue wearing his walking boot for an additional 90 days. (*Id.* at 37.)

An MRI was performed on Fernandez-Morales's right ankle on June 2, 2022. (*Id.* at 15-16.) The impression following that test was a remote sprain of the lateral collateral ligament complex, minor marrow edema noted likely related to early cyst formation, but the results were otherwise unremarkable. (*Id.* at 17.) Fernandez-Morales was seen by Dr. Wulff in the orthopedic clinic on July 11, 2022, to review the results of the MRI. (*Id.* at 17, 19, 35.) The results of the MRI did not provide a medical explanation for Fernandez-

Morales's continued claims of pain, so Dr. Wulff recommended physical therapy, an ankle brace, a flat yard, and orthopedic follow-up visits if Fernandez-Morales continued to be symptomatic. (*Id.*)

From November 2021 until September 2022, Fernandez-Morales was provided tramadol, lidocaine patches, and Tylenol for pain related to his ankle injury. (*Id.* at 42, 44-46, 48, 50, 53-55, 56-61, 63, 65-74, 76-79.) Fernandez-Morales was referred to MML Physical Therapy, and he had a two-hour appointment with their physical therapy team on August 3, 2022. (*Id.* at 19-25, 35.) Fernandez-Morales appeared at this appointment with no swelling or discoloration noted on any extremity, and with no evidence of muscular atrophy or wasting. (*Id.* at 23.) Fernandez-Morales was instructed in the independent performance of a home exercise program that addressed the goals outlined in his plan of care. (*Id.* at 25.) Finally, Fernandez-Morales was issued a written home exercise program, and he was instructed on the safe performance of all exercises to be performed daily. (*Id.*; ECF No. 66-14 at 11.)

The unusual occurrence report dated October 24, 2021, has no indication that Fernandez-Morales complained about pain in his testicle to SDCC medical staff. (ECF No. 68-3 at 2.) Medical records from UMC similarly bear no indication Fernandez-Morales complained to the doctors at the hospital about his testicle hurting. (*Id.* at 3-9.) On December 22, 2021, a progress note stated Fernandez-Morales was seen at sick-call for right "groin pain" and was given an analgesic and would have a urology consult. (*Id.* at 27, 40.)

On May 10, 2022, Fernandez-Morales consented to a genital examination, which was conducted by Omandac. (*Id.* at 26, 27.) The examination showed a 3.5 cm by 2.5 cm "cystic [and] tender mass at the left testicle." (*Id.* at 27.) The consultation report following the exam stated Fernandez-Morales was experiencing pain in the left testicle that started after a fall from the top bunk on October 24, 2021. (*Id.* at 27.) Following the examination, Omandac submitted a referral requesting Fernandez-Morales have an ultrasound performed on his testicles. (*Id.*) The referral was approved, and the ultrasound was

performed on July 15, 2022. (*Id.* at 28-29.) The results of this test showed no acute findings, but also noted "testicular microlithiasis" and "small bilateral hydroceles". (*Id.* at 29.)

On June 27, 2022, Omandac referred Fernandez-Morales to be seen by a Urologist. (*Id.* at 30.) This referral was approved on July 6, 2022, and a second referral was approved on September 21, 2022. (*Id.* at 30-32, 35, 42.) However, there was no outside medical provider in the Las Vegas area willing to accept inmate patients for urology appointments in the later part of 2022, beginning around August 2022. (ECF No. 66-8 at 3.) On January 23, 2023, Fernandez-Morales was transferred to High Desert State Prison. (ECF No. 66-2 at 2.)

## II.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas*

*Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a

dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

III. **DISCUSSION**

   A. **Unsafe Prison Conditions**

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the

crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Fernandez-Morales's unsafe prison conditions claim is based on allegations that he submitted kites and requests to Defendants Grazzini and Robison to give him new lights and a ladder so that he could safely climb up his bunk bed, which was unbolted from the wall. However, these Defendants ignored Fernandez-Morales's requests and did not provide him with any relief. As a result, Fernandez-Morales alleges he fell while trying

to climb up his bunk bed in the dark and sustained an ankle injury. The maintenance department allegedly only changed the lights after Fernandez-Morales fell, and he never received a ladder.

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eight Amendment." *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985). A prisoner's constitutional rights are infringed by inadequate lighting. *See id.* It is undisputed that Fernandez-Morales had inadequate lighting in his cell, which resulted in him falling from his bunk and sustaining an ankle injury. However, Fernandez-Morales must also prove Defendants Grazzini and Robison acted with deliberate indifference.

The undisputed evidence before the Court shows the following: From June 7, 2021, until July 9, 2022, Fernandez-Morales was housed at SDCC in Unit 3, Wing C, Cell 1, Bunk A. (ECF No. 66-2 at 2.) Bunk A is a lower bunk. (ECF No. 66-4 at 4; ECF No. 66-16 at 4.) On September 15, 2021, Fernandez-Morales submitted an inmate request form requesting that a ladder be installed on his bunk. (ECF No. 66-4 at 4.) However, this kite did not generate a work order for maintenance because it did not come from an approved source. (*Id.*) As outlined in AR 487, work orders cannot be submitted on a kite because they must contain a proper authorized signature when they are received by the maintenance department. (ECF No. 66-5 at 2.)

On October 12, 2021, a work order—the first regarding the lights in Fernandez-Morales's cell—was issued, noting that one light was out while the other was flickering. (ECF No. 68-2 at 3.) On October 13, 2021, a second work order regarding the lights being out was entered. (*Id.* at 4.) On October 14, 2021, a third work order was entered, stating the light switch was not working. (*Id.* at 5.) Finally, on October 18, 2021, a fourth work order was entered regarding both lights being out. (*Id.* at 6.) This final work order notes the work was completed on October 26, 2021. (*Id.*) There are no work orders regarding replacing Fernandez-Morales's bunk or providing a ladder at the time relevant to this lawsuit. (*See id.* at 2-6; ECF No. 66-6 at 5-6.) None of these kites or work orders were directed to Defendants Grazzini or Robison. Further, there is no evidence that either

Defendant took part in the creation or completion of any of these work orders.

There is no evidence that either Defendants was aware of the conditions of Fernandez-Morales's cell before his fall. There is no evidence in the record related to Defendant Grazzini being made aware of any issues related to lighting or a request for a ladder. In fact, in Fernandez-Morales's complaint, he alleges Grazzini was only made aware of the conditions *after* the fall on November 1, 2021. (*See* ECF No. 9 at 6.) The only evidence related to Robison's involvement is his response to Fernandez-Morales's informal grievance, which was generated on December 21, 2021, well *after* the last work order was completed. (ECF No. 66-9 at 2.) Thus, there is no evidence either Defendant could have known of the risk of Fernandez-Morales suffering harm, much less that either Defendant disregarded that risk.

For all of these reasons, Defendants have met their burden on summary judgment as they have submitted admissible evidence establishing that they did not disregard a risk to Fernandez-Morales's safety. The burden now shifts to Fernandez-Morales to establish that a genuine issue of material fact actually exists. Fernandez-Morales must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*, 992 F.3d at 897. Fernandez-Morales does not submit evidence showing Defendants Grazzini or Robison knew of and disregarded a risk to his safety. Thus, Fernandez-Morales has failed to meet his burden on summary judgment to show an issue of fact that Defendants Grazzini or Robison were deliberately indifferent to his safety. Accordingly, Defendants' motion for summary judgment with respect to the unsafe prison conditions claim is granted.

**B. Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that

"deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if they "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Fernandez-Morales's deliberate indifference to serious medical needs claims are based on two separate alleged injuries sustained in the fall from his bunk: (1) injury to his right ankle; and (2) injury to his left testicle. Each is discussed in turn.

**1. Ankle**

With respect to his right ankle, Fernandez-Morales alleged the following: Omandac did not examine Fernandez-Morales after Fernandez-Morales told him that his ankle pain was severe and the swelling was not decreasing. While Fernandez-Morales did receive an examination with an outside orthopedist after a request to Faulkner, Fernandez-Morales alleges that he suffered pain because of the delay in being referred to the outside specialist.

Starting with the objective element, the parties seem to agree that Fernandez-Morales's ankle injury constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Fernandez-Morales cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Fernandez-Morales's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Fernandez-Morales's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Fernandez-Morales to "demonstrate that the defendants' actions were both an actual and proximate cause of [her] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Fernandez-Morales received related to his right ankle. (*See* ECF No. 68-3.) According to this evidence, Fernandez-Morales received medical treatment on October 24, 2021, in his cell following his fall. (*Id.* at 2.) An unusual occurrence report was prepared by SDCC medical staff documenting their findings during

the medical evaluation. (*Id.*) The assessment and progress notes state Fernandez-Morales suffered a "possible r[ight] foot fracture." (*Id.* at 2, 41.)

That same day, Fernandez-Morales was taken to UMC for further evaluation of his foot. (*Id.* at 2-8, 41.) X-rays performed on Fernandez-Morales's right foot and ankle showed no acute fractures, malalignment, or destructive mass. (*Id.* at 7-8.) Discharge notes state Fernandez-Morales would need a recheck by an orthopedist to evaluate for possible nondisplaced fracture versus sprain. (*Id.* at 3.) Fernandez-Morales was returned to SDCC and a referral to the orthopedic clinic was entered by Omandac on October 25, 2021. (*Id.* at 9, 41.) Fernandez-Morales was approved to be seen in the orthopedic clinic on November 10, 2021. (*Id.* at 9.)

Fernandez-Morales was ultimately seen at the orthopedic clinic on December 8, 2021, by orthopedic specialist Dr. Richard Wulff. (*Id.* at 10.) Dr. Wulff diagnosed Fernandez-Morales with a grade 3 right ankle sprain, which generally takes up to three months to heal. (*Id.*) The appointment ended with a recommendation that Fernandez-Morales receive up to 3000mg of Tylenol for pain, that Fernandez-Morales receive analgesic balm, and continue to have access to his walking boot while recovering, with a follow-up appointment as needed. (*Id.*)

A referral for a follow-up appointment with the orthopedic clinic was issued on December 22, 2021, when Fernandez-Morales was seen for a follow-up appointment regarding his right ankle, and the referral was approved on January 7, 2022. (*Id.* at 11, 40.) Fernandez-Morales was seen in sick call on January 6, 2022, complaining of pain in his right ankle, and he received a refill of his medications. (*Id.* at 38.)

Fernandez-Morales was seen in the orthopedic clinic for a six-month follow-up on April 20, 2022. (*Id.* at 12.) Dr. Wulff noted that all ligaments were intact and recommended an MRI to help diagnose the source of Fernandez-Morales's alleged pain. (*Id.*) Two referrals were completed the next day, April 21, 2022, requesting that Fernandez-Morales have an MRI of his right ankle and be seen again in the orthopedic clinic after the MRI results became available. (*Id.* at 13-14.) On May 10, 2022, Fernandez-Morales was

certified to continue wearing his walking boot for an additional 90 days. (*Id.* at 37.)

An MRI was performed on Fernandez-Morales's right ankle on June 2, 2022. (*Id.* at 15-16.) The impression following that test was a remote sprain of the lateral collateral ligament complex, minor marrow edema noted likely related to early cyst formation, but the results were otherwise unremarkable. (*Id.* at 17.) Fernandez-Morales was seen by Dr. Wulff in the orthopedic clinic on July 11, 2022, to review the results of the MRI. (*Id.* at 17, 19, 35.) The results of the MRI did not provide a medical explanation for Fernandez-Morales's continued claims of pain, so Dr. Wulff recommended physical therapy, an ankle brace, a flat yard, and orthopedic follow-up visits if Fernandez-Morales continued to be symptomatic. (*Id.*)

From November 2021 until September 2022, Fernandez-Morales was provided tramadol, lidocaine patches, and Tylenol for pain related to his ankle injury. (*Id.* at 42, 44-46, 48, 50, 53-55, 56-61, 63, 65-74, 76-79.) Fernandez-Morales was referred to MML Physical Therapy, and he had a two-hour appointment with their physical therapy team on August 3, 2022. (*Id.* at 19-25, 35.) Fernandez-Morales appeared at this appointment with no swelling or discoloration noted on any extremity, and with no evidence of muscular atrophy or wasting. (*Id.* at 23.) Fernandez-Morales was instructed in the independent performance of a home exercise program that addressed the goals outlined in his plan of care. (*Id.* at 25.) Finally, Fernandez-Morales was issued a written home exercise program, and he was instructed on the safe performance of all exercises to be performed daily. (*Id.*; ECF No. 66-14 at 11.)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively treated Fernandez-Morales's right ankle. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Fernandez-Morale to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d

at 1102.

To prove deliberate indifference, Fernandez-Morales must show that a delay in treatment caused further injury. *See Jett*, 439 F.3d at 1096. A delay in providing medical treatment can violate the constitution if it results in injury. *See Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404 (9th Cir. 1985). However, there is no evidence presented that Fernandez-Morales was harmed or injured by the alleged delay in treatment.

Aside from his own assertions, Fernandez-Morales provides no further evidence or support that a delay in treatment caused any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Fernandez-Morales was continuously treated for his right ankle pain and there is no evidence showing that any alleged delay in providing treatment was the cause of any damage. Therefore, Fernandez-Morales has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with his treatment plan. *See Hallett*, 296 F.3d at 744.

Based on the above, the Court grants Defendants' motion for summary judgment as to the medical deliberate indifference claim.

### 2. Testicle

With respect to his left testicle, Fernandez-Morales alleged the following: First, Dr. Omandac and Minev ignored Fernandez-Morales's request to get a medical appointment to address his left testicle pain for a month. Second, Minev ignored Fernandez-Morales's request to procure transportation to an outside urologist. Finally, Dr. Omandac examined Fernandez-Morales's left testicle three times, but Fernandez-Morales alleges Omandac did not provide him with any medical aid. Dr. Omandac did state that Fernandez-Morales should see an outside urologist, but her never received an appointment.

///

Starting with the objective element, the parties seem to agree that Fernandez-Morales's testicle injury constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Fernandez-Morales cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Fernandez-Morales's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Fernandez-Morales's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d at 1128. Moreover, this requires Fernandez-Morales to "demonstrate that the defendants' actions were both an actual and proximate cause of [her] injuries." *Lemire*, 726 F.3d at 1074 (citing *Conn*, 591 F.3d at 1098-1101).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Fernandez-Morales received related to his left testicle. (*See* ECF No. 68-3.) According to this evidence, On December 22, 2021, a progress note stated Fernandez-Morales was seen at sick-call for right "groin pain" and was given an analgesic and would have a urology consult. (*Id.* at 27, 40.)

On May 10, 2022, Fernandez-Morales consented to a genital examination, which was conducted by Omandac. (*Id.* at 26, 27.) The examination showed a 3.5 cm by 2.5 cm "cystic [and] tender mass at the left testicle." (*Id.* at 27.) The consultation report following the exam stated Fernandez-Morales was experiencing pain in the left testicle that started after a fall from the top bunk on October 24, 2021. (*Id.* at 27.) Following the examination, Omandac submitted a referral requesting Fernandez-Morales have an ultrasound performed on his testicles. (*Id.*) The referral was approved, and the ultrasound was performed on July 15, 2022. (*Id.* at 28-29.) The results of this test showed no acute findings, but also noted "testicular microlithiasis" and "small bilateral hydroceles". (*Id.* at 29.)

On June 27, 2022, Omandac referred Fernandez-Morales to be seen by a Urologist. (*Id.* at 30.) This referral was approved on July 6, 2022, and a second referral

was approved on September 21, 2022. (*Id.* at 30-32, 35, 42.) However, there was no outside medical provider in the Las Vegas area willing to accept inmate patients for urology appointments in the later part of 2022, beginning around August 2022. (ECF No. 66-8 at 3.)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively treated Fernandez-Morales's left testicle pain. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Fernandez-Morale to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

To prove deliberate indifference, Fernandez-Morales must show that any alleged delay in treatment caused further injury. *See Jett*, 439 F.3d at 1096. A delay in providing medical treatment can violate the constitution if it results in injury. *See Shapley*, 766 F.2d at 404. However, there is no evidence presented that Fernandez-Morales was actually harmed or injured by the alleged delay in treatment.

Aside from his own assertions, Fernandez-Morales provides no further evidence or support that a delay in treatment caused any damage. He has not come forward with evidence to show Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Fernandez-Morales was treated for his testicle pain and there is no evidence showing that any alleged delay in providing treatment was the cause of any damage. Therefore, Fernandez-Morales has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with his treatment. *See Hallett*, 296 F.3d at 744.

///

Based on the above, the Court grants Defendants' motion for summary judgment as to the medical deliberate indifference claim.[3] *Matsushita,* 475 U.S. at 586.

## IV.  CONCLUSION

Consistent with the above, **IT IS ORDERED** that Defendants' motion for summary judgment, (ECF No. 66), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: November 12, 2024

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3]  Because the Court has determined that the motion for summary judgment should be granted on merits of the claims, it need not address Defendants' other procedural arguments, including failure to exhaust and qualified immunity.